IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Doreen Fuelling,                                          3:06CV7002

       Plaintiff,

    v.                                                    ORDER

New Vision Medical Laboratories, et al.,

       Defendants.


This is a reverse discrimination case. Plaintiff Doreen Fuelling claims that she suffered adverse consequences in the workplace on account of her being a "white Caucasian." She brings several claims against New Vision Medical Laboratories ("New Vision") and its partial owner, St. Rita's Medical Center ("St. Rita's"), alleging race discrimination (hostile work environment and discriminatory treatment) and retaliation under Title VII, 42 U.S.C. § 2000e-2, and its related Ohio statute, O.R.C. § 4112.99, and state common law claims for intentional/reckless infliction of emotional distress.

Pending is defendants' motion for summary judgment. For the reasons that follow, the motion shall be granted.

**Background**

Fuelling, a white female, worked for New Vision as a phlebotomist from March, 2004, until her termination in June, 2006. Fuelling alleges that on one occasion Ruth Ward, Fuelling's African-American supervisor, was present on when some black employees used the term, "nigger," and that

Ward did not intervene or correct the speaker. Fuelling alleges that some employees would use the term, "white bitch," which Fuelling heard but only once identified the speaker. Fuelling, for her part, admits to calling a hostile patient a "stupid nigger" in the presence of another employee.

In Winter or early Spring of 2006, Fuelling refused to perform a "legal alcohol blood draw" for a police officer, based on her understanding of hospital policy. Fuelling was later reported for the incident.

In March, 2006, Fuelling was again asked to do a legal blood draw for a police officer. After initially refusing based on her understanding of correct protocol, plaintiff finally performed the draw. She refused, however, to provide the blood to the officer for testing. After the officer spoke to Dori Gerkin, Fuelling's supervisor, Gerken told Fuelling to hand over the blood, which she did.

Fuelling submitted two reports about co-workers that New Vision would later investigate and find to be false. Fuelling submitted the first such report in May, 2006, after drawing blood from a patient, Mary Barbier. Barbier told Fuelling about a male phlebotomist who had stuck Barbier five times while attempting to get blood from her, but Barbier did not provide a name of the phlebotomist. Fuelling surmised, based on their conversation, that Barbier was referring to a particular phlebotomist at St. Rita's. After checking blood-draw records to confirm her theory, Fuelling then became convinced that she knew the phlebotomist in question and that he worked at St. Rita's. She filed a report identifying that phlebotomist, although it was later discovered by New Vision that the phlebotomist who stuck Barbier five times was not the person Fuelling identified, and in fact the incident occurred years earlier at a different hospital. Ward investigated the incident, reporting her findings to Hymer, and a subsequent inquiry into the matter confirmed those findings.

In June, 2006, Fuelling filed a report claiming that one co-worker had called another co-worker a "stupid, f---ing, Mexican wetback spic." New Vision investigated the incident, and the other three employees present (one observant, one speaker, and one recipient of the comment) admitted that the word, "spic," had been used in jest, but that the other insulting language had not been used.

Fuelling was the subject of numerous complaints from co-workers due to disputes at the workplace.

Fuelling submitted affidavits from some co-workers to substantiate portions of her testimony. Although the affidavits include several generalized, conclusory allegations unfit for consideration at the summary judgment stage, Fed. R. Civ. P. 56(e), they also contain some specific facts. In particular, Betty Brown relates the facts of two separate incidents. First, Brown says that Ward hired a black employee, Kim Napier, for a position at the MedCare Clinic that had opened up. Only those who had completed a particular class would be considered for the position, and only Napier was permitted to take the class (defendants assert that the class was open to everyone). Napier was later given the job.

Brown also alleges that when she complained to Ward, her supervisor, about some of her duties, Ward gave her a verbal warning for being "argumentative." At the same time, Brown alleges, black employees "regularly yelled at [Ward] and denigrated her to her face, and yet she did nothing about it."

After New Vision fired the plaintiff, it replaced her with a white female, Marni Piacenti. It filled the vacancy thereby created with a white male.

**Discussion**

3

Defendants move for summary judgment on all of plaintiff's claims. St. Rita's also moves for summary judgment on the basis that it was not plaintiff's employer. Neither plaintiff nor defendants claim that Ohio's laws regarding discrimination and retaliation vary in any meaningful way from federal laws for the purposes of this case.

### 1. Reverse Discrimination

Defendants argue that Fuelling has not presented sufficient evidence to prove a *prima facie* case of reverse discrimination because: 1) her work-related conflicts have nothing to do with her race; and 2) she was replaced by another white female, so that she cannot show race-based disparate treatment.

Defendants also argue that, even if Fuelling could prove a *prima facie* case of discrimination, undisputed evidence shows that Fuelling's filing of false reports about alleged misconduct by co-workers gave New Vision a legitimate, non-discriminatory basis for terminating her.

In response, plaintiff argues that she has shown evidence that New Vision is "that unique employer who discriminates against the majority," and evidence of disparate treatment. Fuelling points to Ward's favoritism of black employees. Among other allegations, plaintiff claims Ward was more lenient to black employees about coming to work on time, and that Ward bypassed the bid system to put black employees in favored positions. Ward allegedly allowed black employees to use the word, "nigger," while Fuelling was reprimanded for uttering the same word. Ward also allegedly allowed certain black employees to use racial epithets, such as "white bitch," "f---ing white bitch," and "white trash," towards plaintiff and others, without consequence. Finally, Ward allegedly reprimanded white employees for using non-racial foul language while allowing black employees to do so without penalty.

4

Defendants reply by noting that the reprimands plaintiff received – "verbal warnings" – did not affect a material, adverse change in the terms and conditions of her employment. Defendants also challenge statements made in the affidavits of Brown and Zachary, claiming that they fail to satisfy Fed. R. Civ. P. 56(e) since they are conclusory. Defendants also point to statistical evidence to show that black employees were not given special treatment when tardy or absent, as well as further evidence to refute other statements of plaintiff's affiants.

With regard to the verbal warnings, Fuelling argues that such warnings can constitute an adverse employment action, especially when they become a factor leading to termination. In any event, Fuelling argues that this case is not just a discriminatory treatment case, but also a hostile work environment case, and that she need not prove an adverse employment action to prevail.

Fuelling concedes that New Vision has met its burden of showing a legitimate, nondiscriminatory reason for terminating her. She argues, however, that she has at least created a genuine issue of material fact as to whether New Vision's proffered explanation is pretextual. Fuelling's main evidence of pretext depends, however, on the validity of her underlying complaints about her co-workers' alleged misconduct. She insists that one of her two complaints was valid, and that the other was merely mistaken. She maintains that the investigations into the validity of her complaints were partial and the outcomes predetermined.

Defendants once again assert that the evidence Fuelling hopes to use in support of finding pretext – the affidavits of Brown and Zachary – are conclusive and therefore inappropriate to consider for summary judgment.

**A. Discriminatory Treatment**

5

In the typical race discrimination case, a plaintiff must prove that she: 1) is a member of a protected class; 2) was subjected to an adverse employment action; 3) was qualified; and 4) was treated differently than similarly-situated male and/or nonminority employees for the same or similar conduct. *E.g., McClain v. Northwest Cmty. Corr. Ctr. Judicial Corr. Bd.*, 440 F.3d 320, 332 (6th Cir. 2006).

Where, as in this case, the plaintiff claims reverse discrimination, she must prove "background circumstances to support the suspicion that the defendant is that unusual employer who discriminates against the majority." *Zambetti v. Cuyahoga Cmty. College*, 314 F.3d 249, 255 (6th Cir. 2002). Such "background circumstances" exist, for instance, where a supervisor, whose race differs from the plaintiff's, is accused of hiring people of his own race, or "'evidence of [defendant's] unlawful consideration of race as a factor in hiring in the past.'" *Id.*; *Jamison v. Storer Broadcasting Co.*, 1987 WL 44901, at *8 (6th Cir. 1987). A court, however, may not consider incomplete or conclusory statistical data in finding that such background circumstances exist. *Zambetti*, 314 F.3d at 257.

If a plaintiff proves a *prima facie* case of reverse discrimination, "the burden shifts to the defendant to offer a legitimate, non-discriminatory reason for failing to promote plaintiff." *Id.* If defendant offers a valid reason, the burden then "shifts back to the plaintiff to demonstrate that the proffered reason is pretextual," which can be met if plaintiff shows that the reason "1) had no basis in fact; 2) did not actually motivate defendant's conduct; or 3) was insufficient to warrant the challenged conduct." *Id.* (citing *Manzer v. Diamond Shamrock Chem. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994)).

6

Fuelling has not provided background circumstances to show that either defendant is "that unusual employer who discriminates against the majority." *Zambetti*, 314 F.3d at 255. While Fuelling's immediate supervisor, Ward, may be black, Fuelling has not made any allegation that Hymer, who fired her, is also black. With one exception, Fuelling has not revealed, with specific facts, background circumstances at New Vision or St. Rita's suggesting that hiring, firing or terms and conditions of employment were biased against whites.

While Brown's statement that Ward excluded Brown from consideration for a job could arguably provide some semblance of such background, such a single and isolated incident is not enough to warrant labeling New Vision or St. Rita's as "that unusual employer who discriminates against the majority." *Id.* Fuelling has therefore failed to put forth any specific facts that could establish a *prima facie* case of discrimination.[1]

Assuming, *arguendo*, that Fuelling has presented a *prima facie* case of discrimination, she has failed to show that she could meet her burden of proving that New Visions' stated reasons – her false reports about co-workers – was not the real reason for its actions, but is offered as a pretext to conceal unlawful discriminatory animus and motivation.

Fuelling has not presented specific facts to disprove that, after the company investigated Fuelling's reports, Hymer honestly believed that those reports were false. Nor is it helpful to plaintiff that Ward "print[ed] off all the disciplinary actions [Ward] had done so that they would have all the documents they needed." (Ward Dep. at p. 108). Ward subsequently said, in the same deposition, that she did not issue a recommendation as to whether Fuelling should be fired. Furthermore, the warnings of Ward and others to Fuelling did not constitute adverse employment

---

[1] I note, moreover, that Brown's account of Ward's disparate treatment did not implicate Hymer.

actions. *Zanders v. Potter*, 2006 WL 2077594, *4 (E.D. Mich.) ("A letter of warning is exactly the kind of supervisor criticism that *Primes* holds is not a materially adverse employment action.") (citing *Primes v. Reno*, 190 F.3d 765, 767 (6th Cir. 1999)). While those warnings and the incidents that gave rise to them may have contributed to her eventual termination, the undisputed evidence shows that the primary rationale for Fuelling's firing was her submission of reports that Hymer believed were false.

The "determinative question" in a situation where another employee, such as Ward, is alleged to have influenced the corporate decision-maker is "whether [the plaintiff] has submitted evidence that [a particular employee's] racial animus was a cause of the termination." *Noble v. Brinker Int'l, Inc.*, 391 F.3d 715, 723 (6th Cir. 2004) (citations omitted). Fuelling has not shown any evidence that any racial animus held by Ward affected the investigations of the Barbier incident or the alleged anti-hispanic comment, or that the findings of those investigations, as presented to Hymer, were biased. The assertion by Fuelling that Ruth "falsely reported the outcome of [Ruth's] interview with Ms. Barbier" [Doc. 23, Ex. 1 at 14] is conjectural and has no basis in the record cited by Fuelling. Therefore, even if Fuelling could present a *prima facie* case of discrimination, she would not be able to prove that New Vision's proffered reason for terminating her was pretextual.

## B. Hostile Work Environment

To prevail on a claim of hostile work environment, a plaintiff must prove: 1) she was a member of a protected class; 2) she was subjected to unwelcome harassment; 3) the harassment was based on her ethnicity; 4) the harassment unreasonably interfered with her work performance and created a hostile work environment; and 5) the defendant knew or should have known of the charged harassment and failed to implement prompt and appropriate corrective action. *Epelbaum v. Elf*

8

*Atochem, N. Am., Inc.*, 40 F. Supp. 2d 429, 432 (E.D. Kent. 1999) (citing *Blankenship v. Parke Care Centers, Inc.*, 123 F.3d 868, 872 (6th Cir. 1997)).

Fuelling's hostile work environment claim, which is based on the use of language in the workplace, lacks sufficient evidence to survive summary judgment. Use by black employees of a term that is derogatory to blacks is not evidence that any white persons at New Vision were subject to harassment based on their race. Fuelling, however, testified that she, herself, was called various derogatory terms used for whites. Still, Fuelling could only recall one incident where she was called a derogatory term and could identify the speaker. This single incident, which comprises the only specific evidence Fuelling presented regarding use of derogatory terms against her, is not enough to sustain summary judgment on a claim for hostile work environment. *Torres v. County of Oakland*, 758 F.2d 147, 152 (6th Cir. 1985); *Diamond v. United States Postal Service*, 2002 WL 21995, at *3 (6th Cir. 2002); *Hibbler v. Regional Medical Center at Memphis*, 2001 WL 700829, at *2 (6th Cir. 2001); *Vitt v. City of Cincinnati*, 250 F. Supp. 2d 885, 890 (S.D. Ohio 2002).

As a result of the foregoing, defendants' motion for summary judgment will be granted with respect to plaintiff's state and federal claims of discrimination.

## 2. Retaliation

Defendants argue that plaintiff failed to show a causal connection between any allegedly protected activities on her part and her termination.

With regard to Fuelling's filing of racial discrimination charges, defendants claim that they were aware of such charges as of March, 2005, more than fourteen months before plaintiff's June, 2006, termination. That lapse of time, defendants contend, eliminates any basis for finding a nexus between the charges and termination. They note, moreover, that plaintiff's reports about her co-

9

workers occurred in mid-2006, at a time considerably more proximate to the decision to fire her. They also point to other concerns about plaintiff's conduct arising during that period.

Fuelling argues that a lapse of time in between her filing of charges and her termination implies nothing about a causal connection. She claims that the complaints about her behavior were baseless. More importantly, she contends that Ward and Hymer falsely reported the results of their investigations into Fuelling's complaints.

Fuelling directly addresses the two reports she submitted, which New Vision claims led to her termination. With regard to the incident of the patient being stuck five times, Fuelling claims that she was honestly mistaken about who stuck the patient, and that Ruth Ward gave a false report of the statement given by the patient. Therefore, Fuelling asserts, a jury could find that Fuelling "was not terminated because of this event."

As to Fuelling's report about an anti-Hispanic comment being used by a co-worker, which the company later found to be false, she claims that a jury could believe her report. "[G]iven the atmosphere of openly racist language utilized by black employees," she writes, "a jury could easily infer that plaintiff accurately reported the inappropriate language by her coworker, and that the participants in such language would have been highly motivated to lie about it, given New Vision's zero-tolerance policy for racial language."

Defendants point out that Fuelling has failed to show that co-workers who filed complaints knew about or were motivated by Fuelling's protected activity. Defendants also note that Hymer, who made the decision to terminate Fuelling, "has never been accused of any inappropriate language or of even 'overhearing' it." Fuelling responds by saying that Hymer's decision was heavily influenced by Ward, who "printed off all the disciplinary actions she had done on plaintiff."

10

To make out a *prima facie* case of retaliation, a plaintiff must show: 1) she engaged in activity protected by Title VII; 2) this exercise of protected rights was known to the defendant; 3) the defendant thereafter took adverse employment action against the plaintiff; and 4) there was a causal connection between the protected activity and the adverse employment action. *Dixon v. Gonzales*, 481 F.3d 324, 333 (6th Cir. 2007). After establishing a *prima facie* case, the burden shifts to the defendant to articulate some legitimate, non-discriminatory reason for its actions. *Id.* If the defendant makes such a showing, the burden then shifts back to the plaintiff to prove that the proffered reason was pretextual. *Id.*

Fuelling has failed to put forth any evidence of a causal connection between her filing of charges and her termination over a year later. While a one-year lapse in time between the two events would not negate otherwise strong evidence of a causal connection, *Harrison v. Metropolitan Gov't*, 80 F.3d 1107, 1118 (6th Cir. 1996), the temporal distance between the charges and the firing does not, in the absence of such evidence, allow Fuelling to avoid summary judgment. *Franks v. Lear Corp.*, 2005 WL 758783, at *4-5 (W.D. Ky. 2005). Fuelling provides no evidence that co-workers who made complaints about her were motivated by her protected activity, and as noted *supra*, she has no evidence that the information with which Hymer made her ultimate decision was in any way tainted by anyone's racial animus or as a result of Fuelling's charges. Not only has Fuelling failed to make a *prima facie* case, but for reasons already noted, she has failed to show that New Vision's proffered reason for terminating her was pretextual.

### 3. Intentional/Reckless Infliction of Emotional Distress

Defendants contend that New Vision's actions in dealing with plaintiff were not extreme and outrageous as required for a claim of intentional or reckless infliction of emotional distress. Plaintiff,

on the other hand, argues that racial discrimination occurred, and that racial discrimination based on racist remarks can rise to "outrageous" levels.

To state a claim for intentional infliction of emotional distress plaintiff must allege facts sufficient to establish that: 1) the defendant intended to cause the plaintiff serious distress; 2) its conduct was extreme and outrageous; and 3) its action was a proximate cause of plaintiff's serious emotional distress. *Phung v. Waste Mgt., Inc.*, 71 Ohio St.3d 408, 410 (Ohio 1994). The infliction of emotional distress does not have to be associated with another tort or result in physical injury. *Yeager v. Local Union 20*, 6 Ohio St.3d 369, 374 (Ohio 1983). Liability for emotional distress, however, "does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities," but only applies in situations where "the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* at 374-75. Whether a defendant's conduct meets this high threshold is to be judged by the objective standards of the community, not by a particular plaintiff's subjective sensibilities. *Ullmann v. Olwine*, 123 F.R.D. 237, 252 (S.D.Ohio 1987) (citing *Reamsnyder v. Jaskolski*, 10 Ohio St.3d 150 (Ohio 1984)).

Plaintiff argues that defendants' racial discrimination is enough to show extreme and outrageous conduct, but this argument must fail. An employee's termination, even if based upon discrimination, does not automatically rise to the level of "extreme and outrageous conduct." Otherwise, every discrimination claim would simultaneously become a cause of action for the infliction of emotional distress. *Baetzel v. Home Instead Senior Care*, 370 F.Supp.2d 631, 644 (N.D. Ohio 2005) (stating that it is well-established under Ohio law that discrimination, by itself, is insufficient to support an intentional infliction of emotional distress claim); *Godfredson v. Hess &*

12

*Clark, Inc.*, 173 F.3d 365, 376 (6th Cir.1999); *see also Bryans v. English Nanny and Governess Sch., Inc.*, 117 Ohio App.3d 303 (1996) (holding that regardless of whether a plaintiff-student proved her claim of discrimination on the basis of disability, the school's conduct was "not so extreme or outrageous as to be intolerable in a civilized community"). Since I find that defendants did not violate any federal or state discrimination laws, Fuelling's argument fails.

Regardless of whether defendants' behavior violated state and/or federal discrimination laws, Fuelling has at least alleged some insulting and inappropriate behavior by defendants and their employees. That behavior, however, was not "so extreme in degree, as to go beyond all possible bounds of decency." In *Long v. Ford Motor Co.*, 2005 WL 1966315, *14-15 (N.D. Ohio 2005), the court did not find that "outrageous" conduct occurred, even when workers made racial jokes in front of supervisors pertaining to the plaintiff. Long was called a "black son of a bitch" and a "black bastard,"  threatened with physical violence and "given a hard time" when he came into the work area. Because the harassment suffered by Fuelling pales in comparison to the occurrences in *Long*, no reasonable jury could find that defendants' behavior was went beyond the all "possible bounds of decency." *Id.* (citing *Yeager*, 6 Ohio St.3d at 374).

For the reasons stated above, defendants' motion for summary judgment will be granted with respect to Fuelling's claim for emotional distress.

### 4. St. Rita's Status as an Employer

Finally, defendants argue that St. Rita was not plaintiff's employer. They contend that St. Rita's never took any adverse employment action against Fuelling and that, instead, it was New Vision that terminated her. On that ground alone, defendants claim summary judgment is warranted for St. Rita's on all claims.

13

Plaintiff assert that St. Rita's can be held responsible for the following reasons: 1) St. Rita's is a part owner of New Vision; 2) Cason, St. Rita's Vice President of Human Relations, recommended Fuelling's termination; 3) Cason denied Fuelling's appeal from her termination; and 4) Cason's actions in "wrongly berating" plaintiff are a basis for intentional infliction of emotional distress against St. Rita's.

Plaintiff has arguably asserted enough involvement by St. Rita's officials in her termination for that entity to be considered an "employer" under Title VII and associated Ohio laws. Summary judgment will be granted in favor of St. Rita's, however, for the same reasons it will be granted for New Vision. Namely, Fuelling has not shown that St. Rita's is "that unusual employer" who discriminates against the majority, that a causal connection existed between Fuelling's filing of charges and her termination, or that any proffered reason for Fuelling's termination was pretextual. Fuelling has also failed to make any showing that the alleged "berating" she received from Cason amounted to outrageous conduct.

## Conclusion

For the foregoing reasons, it is hereby

ORDERED THAT the defendants' motion for summary judgment be, and the same is hereby granted with respect to all of plaintiff's claims.

So ordered.

s/James G. Carr
James G. Carr
Chief Judge

14